**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

vs.                                                                                          Case No.:  3:04-cr-206-J-20MCR

JAMAL SHAKIR

_____

## **REPORT AND RECOMMENDATION**[1]

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress Oral Statements (Doc. 303) filed February 2, 2005.  The government filed a response in opposition to the Motion on May 19, 2005.  (Doc. 494).  An evidentiary hearing was held before the undersigned on July 12, 2005.

### **I. Evidence Presented at the Hearing**

During the hearing, the government presented the testimony of four police officers, Deputy Jason Anderson, Deputy Diane Espie, Detective Bruce Baker, and Detective Clement Nieto.  Deputies Anderson and Espie testified they responded to the scene of a shooting at 9645 Baymeadows Road in Jacksonville, Florida on December 14, 2003.  (Tr. 14).  Deputy Anderson testified that he was the first police officer on the scene, but by the time he arrived rescue personnel were already present and attending to the shooting victim.  (Tr. 15).  Deputy Anderson testified that while the victim appeared to be in pain, the victim was conscious, responsive, and coherently

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

responded to questions asked by Deputy Anderson. (Tr. 15, 24). In addition, the victim never expressed a desire not to speak with Deputy Anderson and no police officers escorted the victim to the hospital. (Tr. 17). Deputy Anderson further testified that he never asked the victim his name but rather focused his questions on who shot the victim and what the suspects looked like. (Tr. 16, 19, 25). On cross examination, Deputy Anderson testified that his whole conversation with the victim was only 15 to 30 seconds long and it took place as the victim was being wheeled out to the ambulance. (Tr. 22).

Deputy Diane Espie testified that when she arrived at the scene, Deputy Anderson was already present and the victim was being wheeled out to the ambulance. (Tr. 27). Deputy Espie never spoke with the victim, but she collected personal information from the victim's girlfriend, Mashonda Tennyson, who was present at the scene. (Tr. 27, 28). Deputy Espie testified that she ascertained the victim's name to be Jamal Shakir. (Tr. 31).

The United States then presented testimony from Detective Bruce Baker of the Homicide Unit of the Jacksonville Sheriff's Office (JSO). Detective Baker testified that he was called to scene of the crime because the patrol officers believed the victim's injuries to be life threatening. (Tr. 34-35). By the time Detective Baker arrived, the victim had already left for the hospital. (Tr. 33). He never spoke with the victim at the scene, but was advised by the patrol officers that the victim's name was Jamal Shakir. (Tr. 33-34). Upon cross examination, Detective Baker testified that he called the hospital to inquire about the status of the victim and learned that the victim's injuries

were no longer considered to be life threatening.  (Tr. 36-37).  At this point, Detective Baker referred the investigation to JSO's Robbery Unit for further inquiry.  (Tr. 38).

Detective Clement Nieto of JSO's Robbery Unit then testified that he was assigned to the investigation on December 16, 2003.  (Tr. 41).  Detective Nieto testified that the information he received from the original report indicated that two or three suspects entered the victim's home, ransacked it and shot one of the occupants, but the report did not mention if anything was stolen.  (Tr. 42).  As a result, Detective Nieto called the contact numbers listed on the report to inquire if anything was, in fact, stolen.  Id.  Detective Nieto first spoke with Ms. Tennyson and then placed a second call to Defendant; both calls took place on December 16, 2003.  (Tr. 42, 43).

Detective Nieto testified that when he called Defendant on the phone he identified himself as a detective from the robbery unit of JSO.  (Tr. 44).  Detective Nieto testified he was aware that Defendant was in the hospital, but Defendant never complained of pain or being unable to answer questions due to medication.  (Tr. 44-45, 60).  To the contrary, Detective Nieto testified Defendant was clear and concise on the phone and gave a coherent statement.  (Tr. 45).  Detective Nieto testified that he never read Defendant his Miranda rights because he believed Defendant to be the victim of a crime, not a suspect.  (Tr. 47-48, 60).  The whole conversation lasted no longer than ten minutes and ended with an agreement that Defendant would come down to the police station for further conversations when Defendant was feeling better.  (Tr. 47, 60).  Defendant never went to the police station and Detective Nieto has not spoken to Defendant since.  (Tr. 49).

On cross examination, Detective Nieto testified that he never spoke with any doctors or nurses on December 16, 2003 who were treating Defendant in the hospital. (Tr. 53). Detective Nieto further testified that he was not advised of Defendant's condition by either Defendant's girlfriend, Ms. Tennyson, or by Defendant himself. (Tr. 55, 57). Detective Nieto reiterated that Defendant did not sound like he was under the influence of any intoxicants as he was clear and concise. (Tr. 55).

Defendant then testified on his own behalf regarding his conversation with Detective Nieto. Defendant testified he spoke with Detective Nieto over the telephone while in the hospital. (Tr. 69). According to his own testimony, Defendant was aware Detective Nieto was a police officer and he understood the questions that Detective Nieto asked. (Tr. 69, 70). Defendant also testified that at the time of the conversation with Detective Nieto he had tubes in his nose and he was under the influence of pain medication. (Tr. 70).

On cross examination, Defendant testified he never considered himself under arrest while in the hospital nor did he believe he was in police custody or a suspect of a crime. (Tr. 76). Defendant further testified that no police officers visited him in the hospital, and there were no police officers monitoring his room. (Tr. 75). Defendant also admitted he never advised Detective Nieto that he was recovering from surgery, had tubes in his nose, or was under the influence of pain medication. (Tr. 77-78). Yet, Defendant repeated that he understood Detective Nieto's questions and he was able to answer them. (Tr. 79).

## II.  Argument

Defendant seeks to suppress the statements he made to Detective Nieto while in the hospital on the grounds that: (1) Detective Nieto failed to administer the warnings of Defendant's constitutional rights as required by Miranda v. Arizona, 384 U.S. 436 (1966); and (2) Defendant's statements were not voluntary because he was recovering from surgery for gunshot wounds.  (Doc. 303).  The Court will address each of these arguments separately.

### A.  Miranda Warnings

Defendant argues that the oral statements he made to Detective Nieto should be suppressed because they were taken in violation of his constitutional rights since Detective Nieto failed to administer Miranda warnings when they spoke over the telephone on December 16, 2003.  (Doc 303).

The Supreme Court in Miranda v. Arizona held that a defendant must be advised of his constitutional rights by police when held during a "custodial interrogation."  384 U.S. at 444.  The Court defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  Id.  One of the defining characteristics of custodial interrogation is a "police-dominated atmosphere" which may bring forth "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely."  Id. at 467.

In order to generate such a "police-dominated atmosphere" when an individual questioned by police is being treated at a hospital, the Ninth Circuit held that law

enforcement officials need to be closely involved in the individual's hospitalization. U.S. v. Martin, 781 F.2d 671, 673 (9th Cir. 1986). Specifically, the Ninth Circuit stated that an individual may be in police custody when being treated at a hospital if "police took a criminal suspect to the hospital from the scene of crime, monitored the patient's stay, stationed themselves outside the door, arranged an extended treatment schedule with the doctors, or some combination of these." Id.

In this case, there is no question that Defendant was neither taken into police custody nor significantly deprived of his freedom of action. The evidence presented at the hearing demonstrated that law enforcement officials were in no way involved in Defendant's hospitalization and, thus, Defendant could not be considered "in custody" for Miranda purposes. The testimony provided by Deputy Anderson, the first law enforcement officer on the scene, established that no police officers escorted Defendant to the hospital. Detective Baker further testified that no police officers ever visited Defendant while he was in the hospital and the only call made to the hospital was to determine the status of Defendant's injuries not to monitor Defendant's stay at the hospital or to arrange for an extended treatment schedule. Additionally, Detective Nieto testified he called Defendant at the hospital to gather details about the robbery and shooting of which Defendant was the victim. Detective Nieto stated that he never believed Defendant to be the suspect of the crime. Finally, Defendant testified on cross examination that he never considered himself to be under arrest, in police custody, or the suspect of a crime while in the hospital.

Here, the evidence shows that Defendant was not in police custody at the time he made the statement to Detective Nieto, and consequently, there was no need for Miranda warnings prior to questioning.  The police did not escort Defendant to the hospital, monitor his stay, station themselves outside his door, or arrange for an extended treatment schedule.  There is no evidence to suggest that the law enforcement officials did anything to take Defendant into custody or deprive him of his freedom of action.  In fact, Defendant's arrest did not occur until approximately seven months after his release from the hospital, and seemed to have no relationship to the hospitalization.  Accordingly, the Court finds that based on the totality of the circumstances, Detective Nieto did not violate Defendant's constitutional rights by failing to read him Miranda warnings prior to questioning.

### B.  Voluntairness of Statements

Defendant next argues his statements made to Detective Nieto while he was in the hospital should be suppressed because they were involuntary.  Specifically, Defendant argues the statements were not voluntary because there were made following surgery for gunshot wounds. (Doc. 303).

The Supreme Court has reasoned that in order to be voluntary, statements made to law enforcement officials must be the product of "free and rational choice."  Mincey v. Arizona, 437 U.S. 385, 401 (1978) (citing Greenwald v. Wisconsin, 390 U.S. 519, 521 (1968)).  Thus, determination of whether a statement is involuntary requires a careful evaluation of all the circumstances of the interrogation.  Id.  While reviewing the totality of circumstances of the interrogation, courts have closely considered the following

factors: (1) police coercion, (2) length of the interrogation, (3) location and continuity of the interrogation, (4) the defendant's maturity, education, physical condition, and mental health, and (5) whether the defendant was advised of his constitutional rights. Abela v. Martin, 380 F.3d 915, 928 (6th Cir. 2004) (citing Withrow v. Williams, 507 U.S. 680, 693-94 (1993)).

In this case, the evidence presented at the hearing demonstrated that Defendant was awake and coherent when he spoke to Detective Nieto over the telephone. The undisputed evidence established that Detective Nieto did not speak with Defendant until December 16, 2003, two days after Defendant was shot and admitted to the hospital. Detective Nieto testified he identified himself as a police detective when he spoke with Defendant and Defendant testified that he was aware that Detective Nieto was a law enforcement officer. While Defendant testified that he had tubes in his nose and was under the influence of pain medication when he spoke with Detective Nieto, he also testified that he never advised Detective Nieto of his physical condition nor did he tell Detective Nieto that he was recovering from surgery. Additionally, on direct examination, Defendant testified that he understood the questions asked by Detective Nieto and was able to answer them. Detective Nieto also testified Defendant never indicated that he did not want or was unable to speak with him. Rather, Detective Nieto testified that Defendant sounded clear and concise over the telephone and the whole conversation lasted only ten minutes.

There is no evidence in this case of police coercion or extended and oppressive questioning. Defendant's own testimony established that he was coherent and

understood the questions asked by Detective Nieto. Moreover, there is a lack of evidence in the record to establish that Defendant was under the influence of pain medications which rendered him unable to make a coherent statement. Thus, the Court finds that although the Defendant was recuperating from surgery for gunshot wounds at the time the statements were made, there is sufficient evidence to establish Defendant's statements were voluntary.

Accordingly, after due consideration, it is

**RECOMMENDED**:

Defendant's Amended Motion to Oral Statements (Doc. 303) be **DENIED**.

**ENTERED** at Jacksonville, Florida this  27th  day of July, 2005.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party